Doe v Wilhelmina Models, Inc. (2024 NY Slip Op 00969)

Doe v Wilhelmina Models, Inc.

2024 NY Slip Op 00969

Decided on February 27, 2024

Appellate Division, First Department

HIGGITT, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 27, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Jeffrey K. Oing Saliann Scarpulla Julio Rodriguez III John R. Higgitt

Index No. 950242/19, Motion No. 4395 Appeal No. 1025 Case No. 2022-05086 

[*1]Jane Doe, Plaintiff-Appellant,
v
Wilhelmina Models, Inc. et al., Defendants-Respondents.

Plaintiff appeals from an order of the Supreme Court, New York County (Laurence L. Love, J.), entered on or about October 11, 2002, which, insofar as appealed from as limited by the briefs, granted defendants' motions to dismiss.

Reavis Page Jump LLP, New York (Gregory P. Feit and John A. Beranbaum of counsel), for appellant.
Heerde Law PLLC, New York (Matthew C. Heerde of counsel), for Wilhelmina Models, Inc., respondent.
Smith, Gambrell & Russell, LLP, New York (Andrew C. Nordahl and Brian P. Norton of the bar of the State of Illinios, admitted proc hac vice, of counsel), and Smith, Gambrell & Russell, LLP, New York (David A. Pellegrino of counsel), for Cal Tan, LLC and New Sunshine, LLC, respondents.

HIGGITT, J. 

In 2019, the New York State legislature enacted the Child Victims Act (CVA), to provide a pathway for redress to childhood victims of sexual abuse. The Act recognized the difficulty of young persons in experiencing, reporting and realizing the extent and effect of the damage caused, both physical and psychological, and the concomitant delays in seeking a remedy for sexually abusive acts.[FN1] In furtherance of this recognition, the CVA amended the Criminal Procedure Law to enlarge various criminal statutes of limitations; it amended the Civil Practice Law and Rules to permit revival of civil claims stemming from the commission of sexual offenses against children; and it amended the General Municipal Law, Court of Claims Act, and Education Law to dispense with notices of claim, where the time to serve them would have long expired (see 2019 NY Senate-Assembly Bill S2440, A2683, enacted as L 2019, ch 11, § 3).
The appeal before us involves CPLR 214-g, one of the civil components of the CVA. CPLR 214-g revived, for a finite window commencing February 14, 2019,
"every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in [Penal Law article 130] committed against a child less than eighteen years of age, incest as defined in [Penal Law §§ 255.27, 255.26 or 255.25] committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in [Penal Law § 263.05], or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age."
Claims and causes of action brought pursuant to the CVA must therefore arise "as a result of" at least one of the three above-defined types of predicate conduct — a Penal Law article 130 offense, incest, or a sexual performance.
Only conduct meeting the requirements of CPLR 214-g suffices to revive causes of action asserted under the CVA. Revival, however, merely means that the statute of limitations does not bar the underlying cause of action. Revival does not establish the viability [*2]of a cause of action for CPLR 3211 (or other) purposes. That is a separate analysis, independent of whether a plaintiff has established sufficient predicate conduct permitting revival.
This appeal gives us occasion to examine pleading requirements for civil actions and proceedings brought pursuant to the CVA, particularly as they relate to the allegations of predicate conduct in satisfaction of CPLR 214-g.
I.
The second amended complaint of plaintiff, a then-aspiring model, alleges causes of action against two sets of defendants. As against Wilhelmina Models, Inc., the modeling agency that represented her, the claims arise from the conduct of photographers at several photoshoots, occurring when she was 17 years old. As against Cal Tan, LLC and New Sunshine, LLC (collectively, Cal Tan), a seller of suntanning products that hired plaintiff as a model for a print marketing campaign, the claims arise from the conduct of the photography crew at a photoshoot in Mexico, occurring when she was 16 years old. The complaint further includes allegations, as to both defendants, that plaintiff was touched inappropriately by persons participating in these photoshoots. As against both defendants, the complaint alleges a cause of action for invasion of privacy and a cause of action denominated "negligence and breach of fiduciary duty." Plaintiff alleges an additional cause of action against Wilhelmina for sexual harassment. As to both defendants, for the purposes of revival under CPLR 214-g, plaintiff alleges that their conduct constituted both Penal Law article 130 offenses and a sexual performance under Penal Law § 263.05.
Both defendants moved to dismiss the complaint as barred by the statute of limitations and for failure to state a cause of action, asserting that plaintiff had failed to allege conduct meeting the requirements of the Penal Law that would permit revival of her claims, and thus the claims were time-barred. Cal Tan additionally moved under CPLR 202, asserting that the claims were untimely under the statutes of limitations of both New York and Mexico. Supreme Court granted the motions, finding that the CVA did not apply to acts occurring outside New York State, and that the complaint did not allege "sexual conduct," as defined by the Penal Law and required for a sexual performance. Plaintiff appeals from that order.
II.
As a preliminary matter, we address Cal Tan's arguments against application of the CVA to claims arising from sexual abuse that occurred outside of New York State.
To the extent Cal Tan argued that plaintiff's nonresidence in New York required examination of the statutes of limitations of both New York and Mexico (see CPLR 202), we find that plaintiff adequately alleged that she was a resident of New York State at the time of the alleged acts. Accordingly, the statutes of limitations provided by New York law, of which CPLR 214-g is one, govern plaintiff's claims.
We resolve the question of CVA's applicability to this matter [*3]in plaintiff's favor. We recently held in Samuel W. v United Synagogue of Conservative Judaism (219 AD3d 421 [1st Dept 2023]) that the purpose of the CVA was to remedy the injustices to survivors of child sexual abuse by extending "New York's restrictive statutes of limitations that required most survivors to file civil actions or criminal charges long before they reported or came to terms with their abuse" (id. at 422 [internal quotation marks omitted]). We further found that the statute's "plain language revived every covered civil claim or cause of action that would have been properly brought in New York in the first instance, of course subject to applicable provisions of the CPLR, including CPLR 202" (id. [internal quotation marks omitted and emphasis added]; see also Shapiro v Syracuse Univ., 208 AD3d 958, 962 [4th Dept 2022], lv denied 210 AD3d 1456 [2022]). Consistent with the holding in Samuel W., we find that the extraterritoriality of the conduct alleged against Cal Tan does not preclude application of the CVA to plaintiff's claims against it.
III.
We next reach whether the complaint adequately alleged that either defendant used plaintiff in a sexual performance as defined in Penal Law § 263.05, as required under CPLR 214-g.
Under Penal Law § 263.05, "[a] person is guilty of the use of a child in a sexual performance if knowing the character and content thereof he employs, authorizes or induces a child . . . to engage in a sexual performance." A "performance" is defined as, among other things, a photograph (see Penal Law 263.00[4]), and a "sexual performance" is "any performance or part thereof which . . . includes sexual conduct by a child" (Penal Law § 263.00[1]). "Sexual conduct" includes, as is relevant here, "lewd exhibition of the genitals" (Penal Law § 263.00[3]). Accordingly, we must examine whether plaintiff adequately alleged, under the Penal Law § 263.05 aspect of CPLR
214-g, that defendants used a child in a photographic performance that includes the lewd exhibition of the genitals.
The Penal Law does not define the phrase "lewd exhibition of the genitals," and it does not define "lewd," "exhibition" or "genitals." The Penal Law does, however, differentiate "genitals" from "breasts" and "buttocks" (see Penal Law § 263.00[6]); thus, depiction of those latter body parts does not constitute a lewd exhibition of the genitals (see People v Pinkoski, 300 AD2d 834, 836-837 [3d Dept 2002], lv denied 99 NY2d 631 [2003]).
To determine whether a depiction constitutes a "lewd exhibition of the genitals" for purposes of Penal Law § 263.05, our courts have cited to a six-factor test enunciated in United States v Dost (636 F Supp 828 [SD Cal 1986], affd sub nom United States v Wiegand, 812 F2d 1239 [9th Cir 1987], cert denied 484 US 856 [1987]), wherein the District Court determined whether photographs seized from the defendants constituted the "lascivious exhibition of the genitals or pubic area" under 18 USC former § 2255(2)(E), [*4]a statute similar in content and purpose to Penal Law § 263.00(3) as a component of Penal Law § 263.05 (see e.g. People v Rivera, 1 AD3d 385, 386 [2d Dept 2003]; People v Horner, 300 AD2d 841, 842-845 [3d Dept 2002]). Plaintiff argues that she has sufficiently alleged a sexual performance because her allegations meet each of the Dost factors.
Under Dost, "in determining whether a visual depiction of a minor constitutes a 'lascivious exhibition of the genitals or pubic area' under [18 USC former] § 2255(2)(E), the trier of fact should look to the following factors, among any others that may be relevant in the particular case:
"1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
"2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
"3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
"4) whether the child is fully or partially clothed, or nude;
"5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
"6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer" (Dost, 636 F Supp at 832).[FN2]
Plaintiff's allegations as to Cal Tan include that she was "instructed . . . to arch her back and look at the camera 'sexy,' 'like a lover,' and think about doing 'naughty things with your boyfriend,'" and that the photographs generated from the photoshoot "included ones in which Doe was depicted topless with her back arched in a sexually suggestive pose; looking out to the sea in a sultry manner; in which she was completely topless and 'naked in the water'; where she is posed suggesting a willingness to engage in sexual activity; and where Doe is standing on a roof, semi- or totally naked."
As to Wilhelmina, plaintiff alleged that at one photoshoot, "[s]he was photographed in [see-through lingerie] with another girl, also wearing see-through lingerie, together in bed. Doe and the other underage model wore coy expressions, as if together they had been doing something naughty, or sexual;" at another photoshoot, where plaintiff was unclothed, she was "instructed . . . to look 'innocent, but sexy' for some photos, and like a 'bad girl' for others"; and that at a third photoshoot she "was made to sit nude on a bed with a white sheet covering part, but not all, of her breast and buttocks."
The parties' dispute does not devolve upon the second through sixth Dost factors. And the parties' debate is not truly as to whether plaintiff alleged that genitalia were the "focal point" of the performance. Rather, the issue, as presented to us by the parties, is whether plaintiff has adequately alleged an exhibition of genitalia at all.[FN3] Plaintiff argues that by alleging that she was photographed "nude" and "naked," this necessarily means that her genitalia were uncovered and depicted in photographs, thus [*5]satisfying any pleading requirement.[FN4]
We first examine Dost to understand the significance of the six-factor test. Prior to 1984, 18 USC former § 2255(2)(E), the statute at issue in Dost, criminalized the "lewd exhibition of the genitals or pubic area" (Dost, 636 F Supp at 830-831). The amendment from "lewd" (which "had been closely associated with the more stringent standard of obscenity") to "lascivious" was "intended to make it clear that an exhibition of a child's genitals does not have to meet the obscenity standard to be unlawful" (id. at 831, citing 130 Cong Rec S3510, S3511 [daily ed Mar. 30, 1984] [statement of Representative Specter]). There being no question that the photos in Dost depicted genitalia (or the pubic area, as permitted under that statute), and that the focal point of the photos was genitalia or the pubic area, the substance of the appeal was the defendant's challenge to the use of the word "lascivious" as unconstitutionally vague. Accordingly, the District Court's task was to explain lasciviousness, not what constituted "genitalia." Dost's admonition that "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area'" (Dost, 636 F Supp at 852) thus cannot be read to make optional "genitalia," given that both the statute in Dost and Penal Law § 263.00(3) require an exhibition of genitalia. Rather, the first factor of the Dost test is whether a photograph depicting genitalia particularly focuses on the genitalia, so as to inform the lasciviousness of the depiction.
The example that Dost gives immediately following its enunciation of the six-factor test demonstrates this:
"For example, consider a photograph depicting a young girl reclining or sitting on a bed, with a portion of her genitals exposed. Whether this visual depiction contains a 'lascivious exhibition of the genitals' will depend on other aspects of the photograph. If, for example, she is dressed in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. The combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the 'average viewer,' but perhaps in the pedophile viewer. On the other hand, if the girl is wearing clothing appropriate for her age and is sitting in an ordinary way for her age, the visual depiction may not constitute a 'lascivious exhibition' of the genitals, despite the fact that the genitals are visible" (id. at 832 [emphasis added]).
Thus, when reciting and relying on Dost's admonition that all factors need not be present, whether there is a depiction of genitalia cannot be disregarded even if there is sufficient indicia of the other factors. The first factor goes only to one aspect of a depiction of genitalia: being a "focal point" of the performance. Therefore, whether genitalia are the "focal point" [*6]of a depiction of genitalia is only one way to examine the photographer's composition insofar as it informs lewdness. In Figueroa v Mazza (825 F3d 89, 101 [2d Cir 2016]), the Second Circuit acknowledges that the function of the Dost test is to determine the lewdness of an exhibition of genitalia ([emphasis added]; see also People v Gibeault, 5 AD3d 952, 954 [3d Dept 2004] [holding that a jury's determination that a video of exposed genitalia was "lewd" was against the weight of the evidence where setting, attire, and poses of the performance were not sexually suggestive or intended to elicit a sexual response]).
To the extent that plaintiff argues that being unclothed satisfies the Dost test and Penal Law § 263.00(3), while our jurisprudence does not require that genitalia be exposed to constitute a lewd exhibition, cases relied upon by plaintiff lack sufficient description of the subject photographs and thus are not instructive as to whether being unclothed, without more, informs lewdness or an exhibition of genitalia (see People v Pendell, 164 AD3d 1063, 1065 [3d Dept 2018], affd 33 NY3d 972 [2019]; People v Wheeler, 99 AD3d 1168, 1172 [4th Dept 2012], lv denied 20 NY3d 989 [2012]; People v McIntyre, 77 AD2d 810, 810 [4th Dept 1980]).
Yet what suffices to uphold a criminal indictment or conviction is not required to find that a civil complaint or petition states a cause of action for purposes of CPLR 3211. On a motion to dismiss made pursuant to that statute, we are obligated to give the pleading a liberal construction, "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
We do not agree with defendants' suggestion that a plaintiff must reiterate the word "genitalia" in a complaint to adequately state a claim for relief emanating from conduct violative of Penal Law § 263.05; rather, the collective allegations must permit the inference. We have previously held that, in this vein, the allegations necessary to survive a CPLR 3211 motion are of "conduct that would constitute a violation of at least one" of the criminal statutes enumerated in CPLR 214-g (Ark 357 Doe v Jesuit Fathers & Bros., 221 AD3d 493, 493 [1st Dept 2023]), or "behavior violative" of an enumerated statute (Ark 55 v Archdiocese of N.Y., 222 AD3d 572, 574 [1st Dept 2023]).
At the pleading stage, as to both defendants, we find that a reasonable inference to be drawn from plaintiff's allegations regarding the photographing of her while she was unclothed is that the resulting photographs may have captured plaintiff's genitalia, thus satisfying the "sexual conduct" component of a Penal Law § 263.05 sexual performance. It is not merely the allegation of nudity that suffices, but the permissible inference that nudity occasioned the exhibition of genitalia, lewdly, in a photographic [*7]performance. We need not and do not reach whether plaintiff will ultimately be successful (see Leon, 84 NY2d at 89), and at this stage, in light of the allegations contained in the complaint and the reasonable inferences to be drawn therefrom, we need not confine our analysis of the allegations to photographs that were ultimately used in Cal Tan's marketing campaign, as submitted on the appeal.
IV.
The next issue we reach is one of statutory interpretation with respect to the function of CPLR 214-g's requirement that the alleged predicate acts be committed against "a child less than 18 years of age." Both defendants urge that plaintiff's age at the time of the alleged conduct precludes application of the CVA because the underlying conduct would not have established all elements of Penal Law § 263.05 permitting revival, because plaintiff exceeded the victim-age limit attendant to that statute. Both defendants urge that the CVA was not intended to revive causes of action where the victim's age at the time of the offenses would not have subjected the actors to criminal liability under the applicable sections of the Penal Law underlying the claims.
Defendants argue that plaintiff fails to state a cause of action where she relies on the sexual performance aspect of CPLR 214-g because the version of Penal Law § 263.05 in effect at the time of the alleged conduct applied only where the victim was less than 16 years of age. They argue that because plaintiff is alleged to have been 16 years old or older at the time of all acts alleged in the complaint, Penal Law § 263.05 did not apply to her, and defendants could not have violated it. They argue that applying the current version of Penal Law § 263.05, as amended in 2001 to apply where the victim was less than 17 years of age, or to engraft upon it CPLR 214-g's victim-age limit of less than 18 years of age, constitutes an impermissible retroactive application of Penal Law § 263.05 in the absence of "language expressly or by necessary implication requir[ing]" retroactive application (Majewski v Broadalbin-Perth Cent. Sch. Dist., 91 NY2d 577, 584 [1998]). They argue further that this violates CVA's purpose of remedying the loss of expired claims, and instead creates a new remedy for a newly created offense.
Wilhelmina additionally argues that the plain language of CPLR 214-g indicates that it was not meant to override the age limitation of Penal Law § 263.05; the two victim-age limitations exist "in harmony" because the age limitation of Penal Law § 263.05 is contained within the age limitation of CPLR 214-g.
Wilhelmina further argues that the grammatical structure of CPLR 214-g indicates that it was intended to revive only claims that would have existed at the time of the alleged conduct. It argues that the phrase "which conduct was committed against a child less than 18 years of age" was intended to apply to the clause "a predecessor statute that prohibited such conduct at the time of the act," and not[*8]"the use of a child in a sexual performance as defined in [Penal Law 263.05]." Wilhelmina contends that because of the proximity of the phrase "which conduct" to the phrase "such conduct," the phrase "such conduct" was intended to refer to conduct prohibited by a predecessor to Penal Law § 263.05, whose provisions and age thresholds the legislature could not have foreseen.
Wilhelmina argues that the net result of this construction is to ensure that regardless of the victim-age limitation in any such predecessor statute, a plaintiff may base a CVA claim on such predecessor only if the alleged conduct occurred when the plaintiff was less than 18 years of age. But Wilhelmina simultaneously, incongruously argues that the CVA's age-limiting phrase should apply only to supply age limits where not otherwise contained in the underlying criminal statutes.
But an examination of legislative history can tell us exactly which statutes preceded Penal Law § 263.05, and to which Penal Law § 263.05 was intended to succeed, and the applicable statutes of limitations. Accordingly, there was no legitimate, rational legislative purpose to impose an age-defined "guardrail" solely on the reach of a predecessor statute to Penal Law § 263.05.
Plaintiff argues that the language "a child less than 18 years of age" is clear and unambiguous and, appearing three times in the statute, indicative of the legislature's intent, particularly in light of the overarching purpose of the statute, which was to combat "the societal plague of sexual abuse against minors" (Assembly Mem in Support of 2019 NY Assembly Bill A2683) compounded by their inability to seek redress through unforgiving statutes of limitations. According to plaintiff, adopting defendants' interpretation would foreclose the claims of 17-year-old victims of Penal Law § 263.05, and others, which could not have been the legislature's intent in enacting the CVA. More fundamentally, plaintiff argues that nothing in the unambiguous text of CPLR 214-g requires the showing of an actual, completed criminal offense. Instead, the CVA uses references to the Penal Law to identify the types of conduct supporting revival. To interpret it otherwise, according to plaintiff, severely limits the reach of the statute and undermines its remedial purpose.
Plaintiff has the better argument on this score. CPLR 214-g applies solely in the civil context (and it applies only to civil "claims," as opposed to crimes), and defendants offer no cogent argument why we should presume that the civil liability permitted thereunder is or was intended to be coextensive with or dependent upon the corresponding criminal liability. At least with respect to the article 130 and incest avenues of CVA revival, the conduct described in the enumerated offenses could underlie any traditional civil cause of action for assault or battery, and such a cause of action may be asserted without reference to the victim's age. As to those offenses, the CVA therefore merely [*9]circumscribes an intentional tort cause of action with reference to particular underlying conduct. Notably, neither defendant argues that the conduct described in the Penal Law sections cited in CPLR 214-g would not support a cognizable civil cause of action, and "the causes of action delineated in CPLR 214-g are cognizable at common law" (Shapiro, 208 AD3d at 961 [internal quotation marks omitted]).
While this Court has not yet had occasion to address this particular issue head-on, the Second Department recently held that, "a close reading of the actual language of the statute evinces that it is not a violation of one of the enumerated penal statutes that is required to trigger the revival of certain civil causes of action, but rather it is 'conduct which would constitute' either a sexual offense as defined in article 130 of the Penal Law, or incest, or use of a child in a sexual performance, as defined in certain sections of the Penal Law (CPLR 214-g)" (S.H. v Diocese of Brooklyn, 205 AD3d 180, 187 [2d Dept 2022] [holding that CVA does not apply to a nonresident asserting claims arising outside of New York]). Similarly, the Second Department has also found that:
"[T]he plain meaning of the phrase 'conduct which would constitute a sexual offense as defined in [Penal Law article 130]' as used in CPLR 214-g refers to the conduct described in the enumerated provisions of the Penal Law, and is not limited to those situations in which the conduct would subject the actor to criminal liability. To read the statute as limited to only that conduct for which the actor could be subject to criminal liability, we would have to interpret the language 'constitute a sexual offense' to mean 'establish a violation,' which would require the Court to legislat[e] under the guise of interpretation" (Anonymous v Castagnola, 210 AD3d 940, 942-943 [2d Dept 2022] [emphasis added, internal citations and some quotation marks omitted]). Castagnola found further that "[n]one of the legislative history suggests that the Legislature intended to limit revival pursuant to CPLR 214-g to only those claims and causes of action that are based on conditions suffered as a result of conduct for which the abuser could have been subject to criminal liability" (id. at 944 [emphasis added]).
The issue in Castagnola was the availability to defendant of infancy as a defense, as opposed to age as an element of the crime. But "[t]he availability of the defense of infancy provided for by Penal Law § 30.00(1) in a claim or action commenced pursuant to CPLR 214-g does not apply to bar the revival of civil claims and causes of action which otherwise meet the claim-revival requirements provided by CPLR 214-g" (Schearer v Fitzgerald, 217 AD3d 980, 982 [2d Dept 2023] [emphasis added]). The language of both S.H. and Castagnola refer to the actor's conduct. Further, each component phrase of the Penal Law § 263.05 aspect of CPLR 214-g refers to "conduct," and not the commission of a crime. The victim's [*10]age, while often constituting an aggravating factor of an offense, cannot be considered a component of the perpetrator's "conduct" (see e.g. People v Coleman, 74 NY2d 381, 385 [1989]; see also People v Reyes, 76 AD3d 864 [1st Dept 2010], lv denied 17 NY3d 821 [2011]). "Rather, references to the Penal Law in CPLR 214-g serve to define the nature of acts covered" (Samuel W., 219 AD3d at 422 [emphasis added]).
Indeed, the purpose of CPLR 214-g was to remedy the statute of limitations barrier to young victims of sexual abuse (see Doe v Educational Inst. Oholei Torah, 2023 NY Slip Op 33946[U], *11 [Sup Ct, Kings County 2023]). To hold, as defendants assert, that the victim-age requirement of any underlying offense be transposed to CVA revival would render the phrase "a child less than eighteen years of age," which appears in the statute several times, superfluous. Given the presence of the phrase "a child less than eighteen years of age" in CPLR 214-g, in each of the branches of the defining conduct (not just those that are applicable to plaintiff's claims), the CVA must be read as extending revival for those underlying criminal offense statutes to any instance where the victim is less than 18 years of age, regardless of whatever age limitation the underlying criminal statute may have imposed. Contrary to Wilhelmina's suggestion, the CVA does not criminalize conduct that would not previously have been subject to criminal liability, and therefore does not constitute an ex post facto law (see Finnigan v Lionetti, 2023 NY Misc LEXIS 16764, *17-*18 [Sup Ct, Bronx County May 4, 2023, index No. 70001/2019E]).
Thus, CPLR 214-g identifies the conduct, and not the criminal liability, that supports revival of a civil cause of action. Further, in light of the language employed by the legislature and the legislative history underpinning the CVA, the victim-age language must be extended equally to each liability prong of CPLR 214-g (see Bankers Trust Corp. v New York City Dept. of Fin., 301 AD2d 321 [1st Dept 2002], mod on other grounds 1 NY3d 315 [2003], citing McKinney's Cons Laws of NY, Book 1, Statutes § 236 ["In the absence of anything in the statute indicating an intention to the contrary, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute"]; see also People ex rel. E.S. v Superintendent, Livingston Corr. Facility, 40 NY3d 230, 236 [2023] ["Where the same word or group of words is used in . . . different statutes, if the acts are similar in intent and character the same meaning may be attached to them"] [internal quotation marks and brackets omitted]).
Defendants' age-related arguments not only add statutory text to the CVA where none exists, they defy the purpose of the CVA. The bill itself states that it was an act to, among other things, "amend the civil practice law and rules, in [*11]relation to the statute of limitations for civil actions related to a sexual offense committed against a child," and also makes reference to "children" and "minors," without further qualification by age (L 2019, ch 11). Other legislation reinforces the notion that we give particular status, and provide particular protections, to persons who are under 18 years old. For example, the CPLR does not define "child," but it defines an "infant" as a person who has not attained the age of 18 years (CPLR 105[j]), as do General Obligations Law § 1-202, Domestic Relations Law § 2 and Family Court Act § 119(c) in defining "infant" and "minor."
The sponsor's memorandum in support of the bill that became the CVA explains the changes to the CPLR as follows:
"This section, as amended, now permits all civil claims or causes of action brought for physical, psychological or other injury or condition suffered as a result of conduct which would constitute a sexual offense against a child against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of that conduct up until the victim reaches 55 years of age" (2019 NY Senate-Assembly Bill S2440, A2683 [emphasis added]).
The memorandum of the bill's sponsor explains that the justification for the proposed legislation:
"This legislation would open the doors of justice to the thousands of survivors of child sexual abuse in New York State by prospectively extending the statute of limitations to age 28 for charging felony sexual offenses, age 25 for charging misdemeanor sexual offenses, and age 55 for bringing civil actions for physical, psychological or other injury suffered as a result of child sexual abuse against any party whose intentional or negligent acts or omissions are alleged to have resulted in the abuse.
"This legislation would also establish a one-year window in which adult survivors of child sexual abuse would be permitted to file civil actions, even if the statute of limitations had already expired or, in the case of civil actions against public institutions, a notice of claim requirement had gone unmet.
"Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties" (Senate Introducer's Mem in Support of 2019 NY Senate Bill S2440).
Thus, where the intent was clearly to provide an avenue of relief to "children," there is no rational basis to exclude some of them from the Act's reach, particularly where the plain language of CPLR 214-g repeatedly extends its reach to "a child less than 18 years of age." The interpretation we adopt here emanates from the statutory language, statutory construction, and legislative history of the CVA. We therefore find that a plaintiff's age at the time of the alleged acts, so long as under 18 years of [*12]age, does not prevent application of the CVA to revive claims otherwise meeting CPLR 214-g's requirements. Thus, plaintiff adequately pleaded that, with respect to her age at the time of the alleged acts, the CVA applies to her.
In light of our determination that plaintiff has adequately pleaded conduct permitting revival under the "sexual performance" aspect of CPLR 214-g, we thus need not reach whether plaintiff adequately pleaded conduct on the part of either defendant that would constitute a Penal Law article 130 offense.
Having found that plaintiff adequately pleaded predicate conduct to permit revival of her claims under CPLR 214-g, we turn to the individual causes of action.
V.
We find that dismissal under CPLR 3211(a)(7) of the negligence and breach of fiduciary duty claims against Cal Tan was proper.
To the extent plaintiff's negligence claim may be read as negligent supervision of plaintiff, she asserts that she adequately alleged that Cal Tan had a duty to "supervise" her owing solely to her age as related to the rest of the crewmembers. Where one "assuming physical custody and control over [children], effectively takes the place of parents and guardians," such person owes a duty "to exercise such care of [the children] as a parent of ordinary prudence would observe in comparable circumstances" (Mirand v City of NY, 84 NY2d 44, 49 [1994] [internal quotation marks omitted]). Plaintiff, however, alleged that Cal Tan employed her, and youth, alone, does not give rise to the duty. There are no factual allegations to support the legal conclusion that plaintiff had been taken into Cal Tan's custody and care so as to be charged with the duty to supervise her (see Justin M. v Beadle, 191 AD3d 1132, 1133 [3d Dept 2021]).
To the extent the negligence cause of action may be read as negligent supervision of Cal Tan's crewmembers, plaintiff alleged only that Cal Tan knew, or should have known, that the photoshoot would produce particular photographs, without alleging any facts as to its knowledge of how the photographs would be obtained, or its knowledge of the propensities of any of the actors involved, including photographers (see e.g. Jackson v New York Univ. Downtown Hosp., 69 AD3d 801, 801 [2d Dept 2010]).
Plaintiff further failed to state a negligence claim on the basis of respondeat superior. The complaint alleges that the makeup artist touched plaintiff for her own sexual gratification, and a clear departure for personal motives does not lend itself to such liability (see Montalvo v Episcopal, Health Servs., Inc., 172 AD3d 1357, 1359-1360 [2d Dept 2019]). Plaintiff argues that because she alleged that the makeup artist would re-apply foundation in case plaintiff's swimsuit "moved around," she adequately pleaded that the makeup artist's actions were undertaken in the furtherance of Cal Tan's business. Plaintiff, however, characterized the makeup artist's rationale as "artifice," thus negating the nonpersonal reason for her actions. Furthermore[*13], there are no allegations that the crewmembers were acting in furtherance of Cal Tan's business when committing the acts complained of, and plaintiff offers no support for the proposition that the crew's mere community of purpose in the manner in which they chose to participate in the photoshoot suggests that their actions were in furtherance of the employer's business, as opposed to their own gratification or entertainment.
We further find that the complaint failed to allege any facts from which to infer that Cal Tan owed plaintiff a fiduciary duty (see e.g. Weintraub v Phillips, Nizer, Benjamin, Krim, & Ballon, 172 AD2d 254, 254 [1st Dept 1991]).
With respect to plaintiff's claim for invasion of privacy, Civil Rights Law § 50 makes it a misdemeanor to use a person's photograph for advertising purposes without having first obtained written consent. Plaintiff alleges that Cal Tan used photos of her in its advertising campaign throughout the country, and that it breached plaintiff's right to privacy when it distributed photos of her without her consent. Because Cal Tan fails to address this cause of action, we reinstate it.
VI.
Wilhelmina did not interpose arguments as to the individual causes of action asserted against it, except insofar as predicated on the conduct of the photographer denominated in the complaint as "Photographer 3," who is alleged to have touched plaintiff inappropriately, solely for his own sexual gratification. Because none of the causes of action asserted against Wilhelmina is wholly dependent on Photographer 3's conduct, dismissal would not be warranted even were we to agree with Wilhelmina's arguments. In light of our finding that there is sufficiently alleged predicate conduct for revival, we reinstate the causes of action asserted against Wilhelmina.
Accordingly, the order of the Supreme Court, New York County (Laurence L. Love, J.), entered on or about October 11, 2002, which, insofar as appealed from as limited by the briefs, granted defendants' motions to dismiss, should be modified, on the law, to deny the motion of defendant Wilhelmina Models, Inc. as to the third and fifth causes of action alleging negligence, breach of fiduciary duty and invasion of privacy, and to deny the motion of defendants Cal Tan, LLC and New Sunshine, LLC as to the second cause of action alleging invasion of privacy, and otherwise affirmed, without costs.
Order, Supreme Court, New York County (Laurence L. Love, J.), entered on or about October 11, 2002, modified, on the law, to deny the motion of defendant Wilhelmina Models, Inc. as to the third and fifth causes of action alleging negligence, breach of fiduciary duty and invasion of privacy, and to deny the motion of defendants
Cal Tan, LLC and New Sunshine, LLC as to the second cause of action alleging invasion of privacy, and otherwise affirmed, without costs.
Opinion by Higgitt, J. All concur.
Manzanet-Daniels, J.P., Oing, Scarpulla, Rodriguez, Higgitt, JJ.
M-4395[*14]— Doe v Wilhelmina Models, Inc., et al.
Motion for leave to file surreply, denied.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 27, 2024

Footnotes

Footnote 1: According to the Senator who introduced the CVA in the New York State Senate,
"New York is one of the worst states in the nation for survivors of child sexual abuse. New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average. Because of these restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety" (Senate Introducer's Mem in Support of 2019 NY Senate Bill S2440). 

Footnote 2: In affirming Dost, the Circuit Court questioned the utility of examining a "willingness to engage in sexual activity" where "[i]n the context of the statute applied to the conduct of children, lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles . . . that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur" (Wiegand, 812 F2d at 1244).

Footnote 3: We note that Penal Law § 263.00(3) requires an exhibition specifically of genitalia, and that no party has argued that depiction merely of the pubic area would suffice here as it did in Dost, where the proscribed conduct in that case included an exhibition of genitalia or the pubic area.

Footnote 4: While there are photographs in the record, the issue here is the sufficiency of the allegations in the complaint with respect to plaintiff's descriptions of photographs generated from the photoshoots, given the circumstances attendant to the photoshoots such as the settings and wardrobe (or lack thereof), together with the cues, poses, and directions given by the photographers.